**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

---------------------------------------------------------x

EBONY EVERSON, Individually and as    )
Administrator of the Estate of Bobby Everson,  )
Jr., Deceased;  SABRINA EVERSON; and   )
BOBBY EVERSON, SR.,     )
    )
        Plaintiffs,    )    **No. _____**
    )
    -against-     )    **COMPLAINT**
    )
UNITED STATES OF AMERICA    )
    )
        Defendant.   )

---------------------------------------------------------x

Plaintiffs Ebony Everson, Individually and as Administrator of the Estate of Bobby Everson, Jr. ("Mr. Everson"); Sabrina Everson; and Bobby Everson, Sr., by and through their attorneys Beldock, Levine & Hoffman, LLP and People's Law Office, for their Federal Tort Claims Act complaint, do hereby state and allege:

## PRELIMINARY STATEMENT

1. On December 15, 2021, Federal Bureau of Prison employees found Bobby Everson Jr., lying in a pool of blood, after his cellmate Donta Maddox strangled and beat him in their cell in the Special Management Unit of a federal prison—the United States Penitentiary Thomson.

2. Donta Maddox fractured Mr. Everson's ribs and face, lacerated his liver, used blunt force on his head and neck, and left him with a serious brain injury, among other injuries.

3. Rather than give Mr. Everson adequate medical care, Bureau of Prisons employees restrained Mr. Everson's hands, feet, and waist so tightly that he was left with bruising.

4. At the time of the attack, Mr. Everson was 36 years old and nearing the end of his prison sentence.

1

5. Mr. Everson's father and mother were looking forward to their son returning home.

6. Mr. Everson's sisters were looking forward to their brother returning home.

7. The day after the attack, Mr. Everson died.

8. Mr. Everson and Donta Maddox were in the care and custody of the United States in the Special Management Unit at the United States Penitentiary Thomson.

9. The United States and its agency, the Bureau of Prisons, locked Mr. Everson and other people in the Special Management Unit in cells the size of parking spaces and forced two prisoners to share a tiny cell nearly every hour of every day.

10. Mr. Everson was in near constant lockdown in a cell with a cellmate that was so crammed and tight that a toilet was right next to the bed.

11. The United States ("U.S.") and BOP are aware that the effects of locking two incarcerated people in cramped cells together for nearly 23 hours a day causes severe harm, such that the practice is known as "double solitary confinement."

12. The BOP's "overuse of solitary confinement causes lasting, irreparable physical, emotional, and mental harm to incarcerated people."[1]

13. Guards on Mr. Everson's unit locked the incarcerated men in hard 4-point restraints, or shackles, for hours and days on end. This practice was so ubiquitous that the scars people received from the restraints were nicknamed the "Thomson tattoo." Many of those locked in the SMU suffered from serious mental health disorders, for which they received little to no medical care.

14. Guards shackled Mr. Everson in these restraints, leaving scars on his ankles, wrists, and abdomen. BOP mental health and medical providers saw Mr. Everson being restrained and failed to intervene or give him medical care.

---

[1] https://www.judiciary.senate.gov/press/releases/durbin-delivers-opening-statement-during-senate-judiciary-committee-hearing-on-deaths-of-incarcerated-individuals-in-federal-prisons.

15. Guards at Thomson placed Mr. Everson in a cell with Donta Maddox, who was dangerous and a threat to Mr. Everson's life and failed to protect Mr. Everson from the obvious threat to his life from his cellmate.

16. The U.S. created and allowed the foregoing conditions that resulted in Mr. Everson's murder.

17. Mr. Everson was the sixth person to die in the SMU at USP Thomson, which had only been open since 2019.

18. Mr. Everson was the fourth person to die in the SMU at USP Thomson because of another incarcerated person attacking him.

## JURISDICTION AND VENUE

11. Plaintiffs' claims are predicated upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, et seq., authorizing actions seeking relief against the United States. Accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1346(b)(1), and 2671, et seq.

19. This Court has subject matter jurisdiction because each cause of action alleged arises out of tortious acts and omissions committed by the Corrections Officer and Bureau of Prison ("BOP") employees acting within the scope of their employment while working at USP Thomson, located in the City of Thomson, Carroll County, Illinois.

20. Venue is proper pursuant to 28 U.S.C. § 1402(b) as a substantial part of the events giving rise to this lawsuit occurred in this judicial district.

## PARTIES

21. Plaintiff Ebony Everson is the sister of decedent Bobby Everson Jr. ("Mr. Everson") and Administrator of the Estate of Bobby Everson, Jr.

3

22. Plaintiff Sabrina Everson is the mother of decedent Mr. Everson.

23. Plaintiff Bobby Everson, Sr. is the father of decedent Mr. Everson.

24. At all times, relevant herein, Mr. Everson was an incarcerated person in the care and custody of the federal government.

25. Defendant United States of America (hereinafter "United States" is the appropriate defendant for Plaintiffs' claims under the FTCA.

26. At all times relevant hereto, Defendant United States, acting through the BOP, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at USP Thomson and was responsible for the hiring, retention, training, supervision, discipline, and conduct of all BOP personnel, including but not limited to the BOP employees referenced herein.

27. In addition, at all relevant times, United States was responsible for enforcing the rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the United States.

28. The BOP employees referenced herein were agents, servants, and employees of Defendant United States, and acted within the scope of their employment, and were responsible for the day-to-day oversight, supervision, care, custody, and control of incarcerated people confined at USP Thomson, including Bobby Everson, Jr.

## CONDITIONS PRECEDENT TO THIS LAWSUIT

29. Plaintiff has complied with the requirements of 28 U.S.C. § 2675 by presenting an Administrative Claim against the United States of America, which was received by BOP.

30. This action is timely brought pursuant to 28 U.S.C. § 2401(b) in that it is begun within six months of BOP's denial of Plaintiff's Administrative Claim.

**JURY DEMAND**

31.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues and claims in this action that are so triable.

**FACTUAL BACKGROUND**

32.      During his incarceration, Donta Maddox beat and strangled Mr. Everson on December 15, 2021, causing Mr. Everson's death on December 16, 2021.

33.     Plaintiff and Mr. Maddox were under the custodial care, supervision, and control of the agents, servants, employees, and independent contractors of Defendant United States and/or the BOP and/or BOP employees.

34.     The BOP wrongfully transferred Mr. Everson to the Special Management Unit at USP Thomson on or about July 2021.

35.     Prior to the transfer, Mr. Everson had been placed on suicide watch numerous times and had documented mental health disorders.

36.     Prior to the transfer, Mr. Everson had expressed anxiety and fear of being hurt by other incarcerated people.

37.     The Special Management Unit ("SMU") at USP Thomson was a program the BOP used to house the what the BOP has determined are the most dangerous people in federal custody, which was an inappropriate designation for Mr. Everson and inappropriate based on mental health condition.

38.     The SMU at USP Thomson operated as a "torture chamber" where people are "having their arms and their legs stretched out and held, separated, for hours and sometimes for days on

5

end." Incarcerated people in the SMU were denied food, denied water, and left in their own waste.[2]

39.     At USP Thomson, U.S. and BOP locked down Mr. Everson and other incarcerated people in the SMU nearly 23 hours a day in small and crammed cells.

40.     During the month that he arrived at the SMU, Mr. Everson repeatedly hit his head against a wall, cutting his face, and had a panic attack, due to the inhumane housing conditions.

41.     Mr. Everson reported to BOP mental health providers that being locked in his cell all day was causing him stress.

42.     BOP employees were on notice of the need to protect Mr. Everson, as another incarcerated person had fought Mr. Everson 17 days before Mr. Everson's death.

43.     Guards indiscriminately used pepper spray on the people incarcerated in Mr. Everson's unit.

44.     Guards at USP Thomson locked incarcerated people, including Mr. Everson, in hard restraints and denied them food and water.

45.     These restraints left Mr. Everson with scars on his wrists, ankles, and abdomen.

46.     BOP employees at USP Thomson were on notice that Mr. Maddox intended to kill Mr. Everson.

47.     BOP employees, including medical and mental health providers, were also aware of Mr. Everson's need for psychological services and his mental condition.

---

[2] Christie Thompson and Joseph Shapiro, *How the Newest Federal Prison Became One of the Deadliest*, The Marshall Project (May 31, 2022) https://www.themarshallproject.org/2022/05/31/how-the-newest-federal-prison-became-one-of-the-deadliest.

48.     While Mr. Everson was confined to his cell, BOP mental health providers visited him cell-side, despite him having no privacy in the cell when speaking to mental health providers, and providers failed to intervene to ensure his safety and security in the SMU.

49.     Officials at USP Thomson did not allow people in the SMU, including Mr. Everson, to leave their cells to receive mental health services.

50.     Prior to this, BOP mental health and medical providers had reviewed officers' use of 4-point restraints on Mr. Everson and failed to intervene, despite Mr. Everson's injuries from his restraints.

***Prior Incidents Involving Donta Maddox***

51.     On March 26, 2021, officers placed Mr. Maddox in a cell on the unit which resulted in a fight between Mr. Maddox and his cellmate.

52.     In a letter Mr. Maddox wrote to a federal court describing the incident, Mr. Maddox described officers' cellmate assignment a "set up" that resulted in Mr. Maddox's cellmate attacking him and resulting in Mr. Maddox needing eye surgery.

53.     Mr. Maddox reported that officers had left him handcuffed, removed the handcuffs of his cellmate, and let his cellmate attack him.

54.     Mr. Maddox made an administrative grievance regarding this incident.

55.     On May 26, 2021, Mr. Maddox refused being placed with a cellmate, as Mr. Maddox did not trust the cellmate and according to Mr. Maddox, the same officers who had previously assigned him a cellmate on March 26, 2021 had made the decision regarding who would be his cellmate.

56.    On May 30, 2021, Mr. Maddox received a disciplinary report for threatening bodily harm and refusing to obey an order and was subsequently placed him in a restraint chair for 22 continuous hours.

57.    On July 15, 2021, officers gave Mr. Maddox a disciplinary ticket for threatening bodily harm, reporting that he had broken the sprinkler head in his cell, threatened staff, destroyed his mattress, and barricaded himself in his cell.

58.    On August 6, 2021, according to Mr. Maddox, officers moved him into a new cell and where he was attacked by another inmate in view of an officer, who deployed OC spray on Mr. Maddox.

59.    For the August 6, 2021, incident, officers wrote Mr. Maddox a disciplinary ticket for fighting and reported that Mr. Maddox and another incarcerated person struck each other in the head and torso. Officers notified the SMU Lieutenant of this incident.

60.    On August 11, 2021, Mr. Maddox reported he was placed in a new cell with a new cellmate, who attacked him in view of officers.

61.    According to Mr. Maddox, he feared for his life at USP Thomson and thought people in the prison were mentally disturbed. Mr. Maddox described himself as enduring an "every day job to keep [his] sanity in this prison."

62.    By August 18, 2021, Mr. Maddox had filed 17 administrative remedies with the BOP and accused others of solicitation to commit a crime of violence.

63.    According to Mr. Maddox, BOP employees knew he needed medication, but he did not receive it.

64. On November 17, 2021, less than one month before Mr. Maddox killed Mr. Everson, Mr. Maddox wrote a letter to a federal court he was paranoid that officers "wanted to bring someone in the cell to jump him" and he was "tired of fighting people."

***BOP Puts Mr. Maddox in a Cell with Mr. Everson, Resulting in Mr. Everson's Murder***

65. Despite numerous incidents, BOP employees did not heed warnings and placed Mr. Everson in a cell with Mr. Maddox.

66. BOP employees, including but not limited to Associate Wardens, Captains, Special Investigative Services supervisors, Unit Managers, and Psychology Services staff failed to ensure the safety of Mr. Everson in his cellmate assignment.

67. Despite Mr. Everson's documented mental illness and signs of mental distress while in the SMU, BOP mental health providers did not give him adequate medical care.

68. BOP employees intentionally disregarded the threat to Mr. Everson's life and the threat of placing Mr. Everson in a cell with Mr. Maddox.

69. BOP employees at USP Thomson had been double-bunking Mr. Maddox in cells with other incarcerated people knowing that Mr. Maddox would injure them, and Mr. Maddox did.

70. When the U.S. and BOP put Mr. Maddox in a cell with Mr. Everson, they knew Mr. Maddox had injured other men who were his prior cellmates.

71. The U.S. and BOP knew at the time they placed Mr. Maddox in a cell with Mr. Everson that Mr. Maddox suffers(ed) from paranoia and other mental health conditions.

72. Doctors and other staff at USP Thomson failed to provide Mr. Maddox his medication or failed to provide him with appropriate medication, and they knew or should have known that the lack of medication and or the inappropriate medication makes Mr. Maddox violent and paranoid.

73. Mr. Maddox had requested his medication issues be addressed, and employees of USP Thomson failed to do so.

74. The U.S. and BOP knew that Mr. Maddox had assaulted numbers of other inmates, including those with whom he was celled.

75. Mr. Maddox and told BOP employees that he was going to assault Mr. Everson if they placed him in the cell with him.

76. Mr. Maddox was taking Mr. Everson's commissary and food trays with knowledge of the staff at USP Thomson.

77. Predictably, on December 15, 2021, Mr. Maddox beat Mr. Everson for approximately 30 minutes and pleaded with BOP guards to let him out of their cell.

78. A BOP guard ignored Mr. Everson, the victim of the attack, and ignored Mr. Maddox's pleas to let him out of their cell where he was attacking Mr. Everson.

79. The BOP guard told Mr. Maddox, "Do it Maddox, just do it" and walked off the unit.

80. Mr. Maddox beat and strangled Mr. Everson.

81. On the next round, Mr. Everson was found in a pool of blood with his head pressed up against the concrete of his cell.

82. During and after the assault, BOP employees failed to protect Mr. Everson and provide him the urgent medical care he needed.

83. Mr. Everson was taken to the USP Thomson infirmary.

84. Rather than give Mr. Everson urgent and proper medical care, BOP employees placed restraints on Mr. Everson's hands, feet, and waist.

85. Mr. Everson's waist restraints were so tight that he was left with bruising.

86. Mr. Everson was left with fractures to his ribs, laceration to his liver, extensive fractures to his face, blunt force injuries to his face and neck, a serious brain injury, and other injuries from the attack.

87. Despite the severity of his injuries, BOP employees delayed calling emergency services.

88. BOP employees failed to properly use an AED on Mr. Everson and provide him the critical emergency care he needed at USP Thomson.

89. Mr. Everson was transported to a hospital but died from his injuries the next morning on December 16, 2021.

***Unsafe Conditions at the Prior Special Management Unit in Pennsylvania***

90. Prior to the opening of the SMU at USP Thomson, incarcerated people had been housed in a special unit at USP Lewisburg in Pennsylvania, which closed and was replaced by USP Thomson.

91. Following Mr. Everson's death, in February 2023, the SMU at USP Thomson has been shut down—for similar reasons that the unit at USP Lewisburg closed.

92. At Lewisburg, staff were accused of violating the civil rights of incarcerated people, especially incarcerated people who were mentally ill.

93. Mentally ill incarcerated people were denied mental health care and placed in restraints at Lewisburg.

94. At least 4 incarcerated people at Lewisburg were murdered by their cellmates.

95. The Office of the Inspector General criticized the mental health treatment at Lewisburg, and the D.C. Corrections Information Council found in 2017 that the use of restraints led to injuries.

96.     Despite many of the problems that double-celling incarcerated people caused at Lewisburg, the practice continued at USP Thomson.

***Unsafe Conditions at the Special Management Unit at USP Thomson***

97.     Dozens of men at the USP Thomson SMU have said that they lived under the pressing threat of violence from cellmates and brutality at the hands of staff.

98.     Dozens of men at the USP Thomson SMU have also reported being shackled in cuffs so tight that they left scars, or being chained by each limb to a bed for hours, in violation of policies and regulations.

99.     The scars that Mr. Everson and other incarcerated people in the SMU sustained were so commonly experienced in the USP Thomson SMU that the scars are referred to as the "Thomson tattoo."

100.    Incarcerated people, including Mr. Everson, were kept in isolation for long periods and officers punished them by shackling them in excessively tight and punitive restraints, leaving them with "Thomson tattoos."

101.    According to a former Warden, over 90 incarcerated people were documented to have "Thomson tattoos."[3]

102.    Guards placed incarcerated people in the unit in danger, double-bunking them in crammed cells in near constant lockdown with another person and placing them in constant threat of violence.

103.    Incarcerated people and psychologists report that such conditions can be worse than single-cell confinement and often leads to violent outbursts.

---

[3] U.S. Senate Committee on the Judiciary, *Durbin Delivers Opening Statement During Senate Judiciary Committee Hearing on the Bureau of Prisons* Oversight (September 14, 2023)
https://www.judiciary.senate.gov/press/releases/durbin-delivers-opening-statement-during-senate-judiciary-committee-hearing-on-bureau-of-prisons-oversight.

104.    Before Mr. Everson was brutally beaten and strangled, multiple people filed documents in federal court describing USP Thomson officers intentionally creating violent conditions by paring individuals together in cells or otherwise escalating tensions, knowing one would attack the other.[4]

105.    For example, one lawsuit alleged that officers spread false information that one incarcerated person in the SMU was convicted of a sex offense, inciting others to physically and sexually assault him.

106.    According to a BOP spokesperson, intentionally ignoring a threat from a cellmate by an officer is misconduct and should prompt investigation.[5]

107.    BOP policy prohibits the use of restraints as punishment and in any manner that restricts blood circulation or in a manner that causing unnecessary physical pain.[6]

108.    The United States, BOP, and BOP staff were on notice, as USP Thomson is one of the deadliest prisons with 3 suspected homicides and 2 alleged suicides between 2019 and December 2021.

109.    The BOP established SMUs to house people who they purport require greater management and for the purpose of ensuring safety and security in BOP institutions.

110.    A former BOP official and corrections consultant described the deaths at USP Thomson as "beyond egregious" and said, "When you look at the policy and goals of the Special Management Unit, it blows my mind that there was [even] one homicide."[7]

---

[4] Christie Thompson and Joseph Shapiro, *How the Newest Federal Prison Became One of the Deadliest*, The Marshall Project (May 31, 2022) https://www.themarshallproject.org/2022/05/31/how-the-newest-federal-prison-became-one-of-the-deadliest.              .
[5] *Id*.
[6] *Id*.
[7] *Id*.

111. When incarcerated people in the SMU refused to be celled with a person who they were afraid could kill them, officers restrained the person who expressed fear for their safety to punish them.[8]

112. In commenting on the decision to close the SMU at USP Thomson, a BOP spokesperson stated that the BOP had "recently identified significant concerns with respect to institutional culture and compliance with BOP policies" which required "immediate corrective measures."[9]

113. Former USP Thomson Warden Thomas Bergami advised a United States Senate committee that USP Thomson has "one of the most violent and abusive cultures he had seen at a prison in 30 years."[10]

114. Rampant racist verbal abuse and extreme isolation of incarcerated people were common. For example, officers frequently used racial slurs against the Black men on the unit while committing acts of violence against them and directed threats, such as a threat to "make you the next George Floyd."[11]

115. Guards at USP Thomson frequently used force on incarcerated people, making Thomson the BOP facility with the highest rate of pepper-spray use, and guards "outed" people that had

---

[8] Christie Thompson and Joseph Shapiro, *How the Newest Federal Prison Became One of the Deadliest*, The Marshall Project (May 31, 2022) https://www.themarshallproject.org/2022/05/31/how-the-newest-federal-prison-became-one-of-the-deadliest.

[9] Christie Thomson and Joseph Shapiro, *One of the deadliest federal prison units is closing*, NPR (February 14, 2023) https://www.npr.org/2023/02/14/1157035089/deadliest-federal-prison-thompson-correctional-center-closing#:~:text=Hourly%20News-,Bureau%20of%20Prisons%20closes%20Thomson%20federal%20prison%20unit%20after%20reports,rife%20with%20violence%20and%20abuse.

[10] *Durbin Delivers Opening Statement During Senate Judiciary Committee Hearing on Bureau of Prisons Oversight*, Dick Durbin United States Senator Illinois (September 13, 2023) https://www.durbin.senate.gov/newsroom/press-releases/durbin-delivers-opening-statement-during-senate-judiciary-committee-hearing-on-bureau-of-prisons-oversight.

[11] Washington Lawyers' Committee for Civil Rights & Urban Affairs Uptown People's Law Center Levy Firestone Muse LLP, *Cruel and Unusual: An Investigation into Prison Abuse at USP Thomson* (2023) at 13.

been convicted of sex offenses, placing them at increased risk of assaults, which guards did not prevent.

116. The United States and officials at USP Thomson were on notice that the prison was not safe.

117. Multiple lawsuits have been filed to put the United States on further notice of the unsafe conditions at USP Thomson, including lawsuits regarding unlawful use of restraints in the SMU.

118. Examples of lawsuits regarding unsafe conditions at USP Thomson include:

    a. *John Doe v. K. Maybury*, 21-cv-50384, N.D. Ill. (Incarcerated person who should have been in protective custody was severely beaten and denied medical care); and

    b. *Van Sach v. Boussag*, 20-cv-50180, N.D. Ill. (Guards at USP Thomson severely assault and unconstitutionally restrained an incarcerated person).

119. The homicides and suicides at the SMU at USP Thomson that occurred before Mr. Maddox attacked Mr. Everson include:

    a. March 2020: BOP guards placed Matthew Phillips, a Jewish man with a Star of David tattooed on his chest, in a recreation with known white supremacist gang members, who kicked and beat him until he became unconscious. Mr. Phillips had previously been targeted by a gang member at USP Thomson, and on information and belief officers were aware of the fight and took administrative action against Mr. Phillips, the victim, as a result. Mr. Phillips died from his injuries.

b. November 2020: Edsel Aaron Badoni, died from stab wounds after a fight with another person incarcerated at USP Thomson in the Special Management Unit).

c. On or about December 2020: Boyd Weekley committed suicide at USP Thomson.

d. Approximately two weeks after Mr. Weekley's death: Patrick Bacon committed suicide at USP Thomson.

e. February 2021: Shay Paniry's cellmate fatally stabbed Mr. Paniry.

120. In March 2022, James Everett was found unresponsive in his cell with homicide as the suspected cause of death with the "Thomson tattoo" on each of his wrists.

121. Other incarcerated people suffered violence but survived in the SMU. Other incidents of violence in relation to cell assignments include:

a. Officers forced Kareem Louis, a person in custody, to cell with an individual they knew was dangerous, and this person eventually stabbed Mr. Louis in the hands, back, arms, and neck, and then raped him while he was unconscious.

b. Another person in custody was threatened by guards, who stated, "We're going to put you in his cell, and you have to beat his ass. He's coming off suicide watch; you're going to have to fuck him up or you got one coming. You're going to have to fuck him up or you got one coming." When this person refused to fight his cellmate, guards beat him so badly that they blinded him in one eye.

c. Officers assigned a trans woman in custody with a cellmate who was openly anti-trans, and this cellmate threatened to rape and beat her. When she

reported the threat and asked for a different cell assignment, officials told her to "fight or fuck," causing her to attempt suicide.

d. Daryl Hickson, a Black man in custody, objected to his cell assignment because of conflict with his cellmate, and a white guard told him, "You either kill or be killed" and "You're going back in that cell to get killed n****r." When Mr. Hickson continued to object, he was subjected to 4-point restraints.[12]

122. An 18-month long investigation of the conditions of the SMU at USP Thomson, which had only been open since 2019, revealed more than 120 people in the SMU experienced extreme physical and psychological abuse.[13]

123. People in custody in the SMU were frequently denied medical care, despite many of them having severe mental illness, like Donta Maddox, which further undermined the safety and security of the unit. In addition to suicides on the unit, other incidents include:

a. Guards restraining a person in custody for 24 hours to punish him for attempting suicide, denying him food, water, and access to a toilet. Guards also punished this person by restraining him for 4 days straight for reporting to Health Services that he was hallucinating. A Thomson doctor told this person in custody: "Get with the program or you'll die."

b. Another suicidal person in custody reported that he wanted to kill himself, and a Thomson doctor asked why he would report this when the doctor was supposed to be leaving work and then told him, "Go do it then!" The doctor

---

[12] Washington Lawyers' Committee for Civil Rights & Urban Affairs Uptown People's Law Center Levy Firestone Muse LLP, *Cruel and Unusual: An Investigation into Prison Abuse at USP Thomson* (2023) at 9.
[13] *Id*. at 2.

then told guards this person in need of emergency medical care was "playing games" and to "beat his ass and take him back to his cell."[14]

124.    Improper use of restrictive housing and restraints led to at least five homicides at USP Thomson in a 2-year period.[15]

125.    As of September 18, 2022, just 485 of the 602 staffing positions are filled at USP Thomson, creating dangerous conditions.[16]

126.    After Mr. Everson's death, officers at USP Thomson attempted to bribe incarcerated people and loosened their restraints in attempt to facilitate attacks on the new warden, who had been tasked with fixing the prison.[17]

127.    The head of training at USP Thomson was Thomas Ray Hinkle is the subject of an Associated Press Investigative report detailing his lack of understanding of basic prison practices.[18]

128.    U.S. Department of Justice Inspector General's Office opened an investigation into Thomson Federal Prison due allegations of violence and mismanagement.[19]

---

[14] *Id*. at 11.

[15] United States Department of Justice Office of the Inspector General, Evaluation and Inspections Division, *Evaluation of Issues Surrounding Inmate Deaths in Federal Bureau of Prisons Institutions*, 24-041 (February 2024); Christie Johnson and Joseph Shapiro, *How the Newest Federal Prison Became One of the Deadliest*, The Marshall Project and NPR, May 31, 2022, www.themarshallproject.org/2022/05/31/how-the-newest-federal-prison-became-one-of-the-deadliest (accessed May 19, 2023).

[16] *Union Says Task Force Is Evaluating Thomson*, QC Times (Aug. 8, 2022) https://qctimes.com/news/local/crime-and-courts/union-says-task-force-is-evaluating-thomson/article_f71da234-137e-514e-b178-18350b9bbab4.html

[17] Christie Thompson, Beth Schwartzapfel, and Joseph Shapiro, *A warden tried to fix an abusive federal prison. He faced death threats*, NPR (November 15, 2023) https://www.npr.org/2023/11/15/1213287194/a-warden-tried-to-fix-an-abusive-federal-prison-he-faced-death-threats.

[18] *AP Investigation: Prison boss beat inmates, climbed ranks*, Associated Press (December 9, 2022) https://apnews.com/article/prisons-us-department-of-justice-united-states-government-e68aaf2e4ead5c9bfb0659db46275405

[19] *Thomson Prison Inmate: "Cruelty Is Just Something You Expect*,*"* QC Times (July 22, 2023) https://qctimes.com/news/local/crime-and-courts/thomson-prison-inmate-cruelty-is-just-something-you-expect/article_459352f5-29cc-5c57-8657-a75e5a219274.html

129. In May 2021, union officials alerted the BOP in a letter that over 30% of USP Thomson's correctional officer jobs were unfilled.[20]

130. Since at least June 2021, USP Thomson had not had an on-site full-time Staff Physician at the prison.[21]

131. In June 2022, nearly half of the nursing positions at USP Thomson were vacant.[22]

132. Medical staff at USP Thomson have reported that vacancies led to longer wait times for incarcerated people to receive medical attention.[23]

133. Staff at USP Thomson have reported to the Department of Justice Office of the Inspector General that employees that investigate in-custody deaths, including homicides, are insufficiently trained in evidence collection.[24]

134. As a matter of both State and Federal law, Defendant had an absolute non-delegable duty to see that incarcerated people in their custody receive adequate custodial care and supervision.

135. Correctional personnel acting as agents for BOP, had the responsibility to maintain the safety, health, and well-being of incarcerated people and to prevent incarcerated people such as Mr. Everson from being subjected to undue harm.

136. Correctional personnel abjectly failed to carry out this responsibility.

137. USP Thomson associate wardens, executive staff, department heads, supervisors, counselors, professional service providers and prison management were grossly negligent in the management, supervision and retention of correctional officers at USP Thomson.

---

[20] *Union Says Task Force Is Evaluating Thomson*, QC Times (August 8, 2022) https://qctimes.com/news/local/crime-courts/union-says-task-force-is-evaluating-thomson/article_f71da234-137e-514e-b178-18350b9bbab4.html.

[21] United States Department of Justice Office of the Inspector General, Evaluation and Inspections Division, *Evaluation of Issues Surrounding Inmate Deaths in Federal Bureau of Prisons Institutions*, 24-041 at 66 (February 2024).

[22] *Id.*

[23] *Id.*

[24] *Id.* at 41.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**Federal Tort Claims Act**

138.    Plaintiffs adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

139.    Defendant United States, having a legal duty under federal and Illinois law, including 18 U.S.C.S. § 4042, to Mr. Everson as a prisoner in its care and custody to provide for the protection of incarcerated people, breached that duty in negligently operating and managing USP Thomson by the above-described acts.

140.    BOP employees failed to adhere to mandatory, non-discretionary BOP policies and procedures and breached the duty of care to Mr. Everson.

141.    Injury to Mr. Everson was reasonably foreseeable as a result of the acts and omissions of BOP employees, who were acting in the course and scope of their employment.

142.    As a direct and proximate cause of the negligence of Defendant United States, its agents, servants and employees, as aforesaid, Mr. Everson has suffered significant injuries, mental and emotional anguish, and conscious pain and suffering from the time he was assaulted on December 15, 2021 to his death on December 16, 2021.

143.    Pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, Plaintiffs are entitled to damages for the negligent acts and omissions of Defendant United States and its agents and employees.

**SECOND CAUSE OF ACTION**
**WRONGFUL DEATH**
**Federal Tort Claims Act**

144.    Plaintiffs adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

20

145. Defendant United States, having a legal duty under federal and Illinois law, including 18 U.S.C.S. § 4042, to Mr. Everson as a prisoner in its care and custody to provide for the protection of incarcerated people, breached that duty in negligently operating and managing USP Thomson by the above-described acts.

146. BOP employees failed to adhere to mandatory, non-discretionary BOP policies and procedures and breached the duty of care to Mr. Everson.

147. Injury to Mr. Everson was reasonably foreseeable as a result of the acts and omissions of BOP employees, who were acting in the course and scope of their employment.

148. As a direct and proximate cause of the negligence of Defendant United States, its agents, servants and employees, as aforesaid, Mr. Everson has suffered injuries and died from those injuries on December 16, 2021.

149. As a further direct and proximate result of BOP employees' breaches described herein, Plaintiffs, along with Mr. Everson's next of kin, including his mother, father, and sisters, have and will forever suffer those injuries and damages set forth in Illinois' Wrongful Death Act, 740 ILCS 180, including, but not limited to, grief, sorrow, mental and emotional suffering, and special damages arising out of the death of Mr. Everson.

150. Pursuant to the Illinois' Wrongful Death Act, 740 ILCS 180, Plaintiffs are entitled to damages for the acts and omissions of Defendant United States and its agents and employees that caused Mr. Everson's death.

**THIRD CAUSE OF ACTION**
**MEDICAL MALPRACTICE**
**Federal Tort Claims Act**

151. Plaintiffs adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

152. Defendant United States, the BOP, and USP Thomson, and agents and employees of the United States, deviated from the acceptable standard of medical care when approving transfer of Mr. Everson to the USP Thomson SMU.

153. Defendant United States, the BOP, USP Thomson, and agents and employees of the United States deviated from the acceptable standard of medical care during the care and treatment of Mr. Everson during his time in custody in the SMU from July to December 2021 and in treating, or failing to treat, him for the injuries he sustained in the attack on December 15, 2021.

154. The aforementioned deviations from the standard of care were the direct and proximate cause of Mr. Everson's injuries, including his death, and the direct and proximate cause of Plaintiffs' injuries and damages.

155. The duty to provide the acceptable standard of medical care to Mr. Everson were mandatory, non-discretionary BOP policies and procedures.

**FOURTH CAUSE OF ACTION**
**MEDICAL NEGLIGENCE**
*Institutional Negligence*
**Federal Tort Claims Act**

156. Plaintiffs adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

157. Defendant United States and the BOP negligently approved transfer of Mr. Everson to the USP Thomson SMU, despite his medical condition.

158. Defendant United States, the BOP, and USP Thomson were negligent in their treatment of Mr. Everson during his time in custody in the SMU from July to December 2021 and in treating, or failing to treat, Mr. Everson for the injuries he sustained in the attack on December 15, 2021.

159. The aforementioned acts and omissions were the direct and proximate cause of Mr. Everson's injuries, including his death, and the direct and proximate cause of Plaintiffs' injuries and damages.

160. The duty to provide the acceptable medical care and meet Mr. Everson's medical needs were mandatory, non-discretionary BOP policies and procedures.

### FIFTH CAUSE OF ACTION
### MEDICAL NEGLIGENCE
### *Individual Employees*
### Federal Tort Claims Act

161. Plaintiffs adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

162. Defendant United States, through its agents and employees, negligently approved transfer of Mr. Everson to the USP Thomson SMU, despite his medical condition.

163. Defendant United States, through its agents and employees, were negligent in their treatment of Mr. Everson during his time in custody in the SMU from July to December 2021 and in treating, or failing to treat, Mr. Everson for the injuries he sustained in the attack on December 15, 2021.

164. The aforementioned acts and omissions were the direct and proximate cause of Mr. Everson's injuries, including his death, and the direct and proximate cause of Plaintiffs' injuries and damages.

165. The duty to provide the acceptable medical care and meet Mr. Everson's medical needs were mandatory, non-discretionary BOP policies and procedures.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant as follows:

23

a. General and special damages for the harms and losses Plaintiffs and Mr. Everson's next of kin and heirs suffered and will continue to suffer, including grief, sorrow, and mental and emotional pain and suffering;

b. General and special damages for the Mr. Everson's personal injuries and conscious pain and suffering Mr. Everson;

c. An award of punitive damages in an amount to be determined at trial;

d. An award of attorney's fees and costs to the fullest extent permitted by law; and

e. Such other and further relief as this Court may deem just and proper.

Dated:        April 24, 2024
              New York, New York

BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016

_____
David B. Rankin (pro hac vice forthcoming)
Regina Powers (pro hac vice forthcoming)
212-277-5825
drankin@blhny.com
rpowers@blhny.com

Dated:        April 24, 2024
              Chicago, IL 60642

*/s/ Jan Susler*

_____
Jan Susler
People's Law Office
1180 N. Milwaukee Ave., 3rd floor
Chicago, IL 60642
773.235.0070
jsusler@peopleslawoffice.com

24